## Case No. 1,126.

### BAXTER et al. v. MAXWELL.

[4 Blatchf. 32.][1]

Circuit Court, S. D. New York. April 21, 1857.

CUSTOMS DUTIES—PROSPECTIVE PROTEST AND SUBSEQUENT ENTRY—HEMP CARPETING.

1. Semble, that the term, "a manufacture of hemp," used in a tariff act, cannot properly include an article generally known in commerce as "hemp carpeting," but in the manufacture of which no material is used which is in fact hemp, or is so called in commercial parlance.

2. Where 30 per cent. duties were charged on an article, under Schedule C of the tariff act of July 30th, 1846, (9 Stat. 44, 45,) as being "carpeting," and, on the payment of the duties, a protest was made, claiming that the article was non-enumerated, and subject to a duty of 20 per cent. under the act, and, on the trial of a suit to recover back the excess, the jury found that the article was "a manufacture of hemp," on which, under Schedule E of the act, the duty was 20 per cent.: Held, that, as the jury found that the article was an enumerated one, the protest was insufficient.

3. A clause, in these words, "and hereby protest on all future entries of the same goods," added at the end of a protest, cannot have any effect as a prospective protest, to aid an insufficient specific protest, subsequently made.

4. Whether such a sweeping prospective protest ought to be held good, in respect to entries at such a port as New York, under the act of February 26th, 1845, (5 Stat. 727,) quere.

5. The case of Marriott v. Brune, 9 How. [50 U. S.] 619, was peculiar, and should not be extended.

6. Where the article in the entry in which such prospective protest was made, was de-

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

scribed therein as "linens," "hemp covering," and "jute rove:" *Held*, that such prospective protest could not apply to a subsequent entry, without protest, of the same article, as "linens," or as "hemp carpet covering," or as "hemp carpeting;" but that it was sufficient to cover a subsequent entry, without protest, of the same article, as "jute rove," the two importations being within three weeks of each other, and no protest having been made on any intermediate importation of the article.

7. Where, after such prospective protest was made, five successive importations of the same article were made and entered, with specific protests, some of which were sufficient and some insufficient, and afterwards importations of it were made and entered without protests: *Held*, that such prospective protest could not extend to these last importations.

[Cited in Fauche v. Schell, 33 Fed. 343.]

8. A specific protest, which does not refer to or affirm a prior prospective protest, must be regarded as evidence of the abandonment of all grounds of objection.

At law. This was an action [by Edward Baxter and William E. Baxter] against [Hugh Maxwell] the collector of the port of New York, to recover back an alleged excess of duties, paid under protest, on an article known in commerce as "hemp carpeting." [Verdict was given for plaintiffs, subject to the opinion of the court on certain points in the case. Judgment for plaintiffs.]

It was shown, on the trial, before Betts, [District Judge,] that the article was generally known in commerce by that name; that it was sometimes bought and sold as jute carpeting; that it did not contain a single fibre of hemp, in the proper and ordinary signification of that term; that it was manufactured at Dundee, wholly from jute, the material from which gunny-bags and gunny cloth are made; that jute was extensively produced in Bengal, and was sometimes called "Indian hemp;" that, although it was the fibre of a plant which resembled the nettle family more than it resembled the article generally designated, in trade and commerce, by the simple name of "hemp," it was sometimes called "jute hemp;" and that it had been sometimes classed as "hemp" or "flax," at the custom-house. Reference was made to McCulloch's Commercial Dictionary, London edition of 1850, article "Hemp." The duties were assessed at 30 per cent. ad valorem, under Schedule C of the tariff act of July 30th, 1846, (9 Stat. 44, 45,) the collector claiming that the article was embraced in that schedule, under the description of "carpeting, being either Aubusson, Brussels, ingrain, Saxony, Turkey, Venetian, Wilton, or any other similar fabric." The plaintiff claimed that the article was chargeable with only 20 per cent. duty, either as falling within the description of "manufactures of hemp, not otherwise provided for," under Schedule E of that act, or as a non-enumerated article, under section 3 of the act. The entries of the article were eighteen in number, and were made at various dates between April 29th, 1852, and April 23d, 1853. The jury found a verdict for the plaintiffs for $1900, subject

to adjustment at the custom-house, and subject also to the opinion of the court as to the sufficiency of the protests.

John S. McCulloh, for plaintiffs.
John McKeon, Dist. Atty., for defendant.

HALL, District Judge. Looking only to the testimony, as stated in the case, I should infer that the jury must have found that the commercial name of the article in question is "hemp carpeting," and not that it is "a manufacture of hemp." If it is, in fact, "a manufacture of hemp," it should be classed under Schedule E, which embraces "manufactures of hemp, not otherwise provided for," and be deemed an enumerated article, chargeable with a duty of 20 per cent. If it is not "a manufacture of hemp," (even though, by a long continuance of an original misnomer, it had acquired the commercial name of "hemp carpeting," and might be properly classed as such,) then it must be deemed a non-enumerated article, and be chargeable with a like duty of 20 per cent., under the third section of the act. If the verdict had found, in express terms, that it was "a manufacture of hemp," or that it was not a manufacture of hemp, but its commercial name or designation was "hemp carpeting," though manufactured wholly of jute, there would have been little ground for controversy. But I do not understand, from the language of the case, that the verdict was special upon these two points, and I am left to infer the finding of the jury in respect thereto, from the evidence stated in the case, the charge of the judge, the general verdict of the jury, and the admissions of the counsel upon the argument of the case.

The case sets forth, that the court, in charging the jury, stated that it was their province to ascertain the commercial name of the article in question, and how it was bought and sold in commerce; that they were to find whether it belonged to the 30 per cent. schedule, as Wilton, Brussels, Aubusson, or other carpeting of similar fabric, or to the 20 per cent. schedule, as a "manufacture of hemp;" that, if it was known as "hemp carpeting," and not by any other name, then it belonged to the 20 per cent. schedule; that, if the evidence did not satisfy the jury that the article came under the head of "a manufacture of hemp," nor under the head of "wool carpetings," then it was not known by any denomination in the act; that the case was resolved into a question of fact for the jury; and that, if the article was not known as "hemp carpeting," and if they found it had no commercial name, then they were to find it to be a non-enumerated article. The case then adds: "The jury, under the instructions of the court, rendered a verdict for the plaintiffs for $1900, subject to adjustment at the custom-house, and subject also to the opinion of the court as to the sufficiency of the protests."

The concluding portion of the charge is evidently not fully and correctly set forth in the case; and the verdict, if correctly set forth, is silent upon the question as to whether the jury deemed the article to be "a manufacture of hemp," and therefore properly classed under Schedule E, or to be "hemp carpeting," or "jute carpeting," and therefore properly dutiable as a non-enumerated article. It was, apparently, assumed, on the part of the defendant, on the argument, that the jury had found it to be "a manufacture of hemp," though no hemp entered into its composition; and the charge of the court, as stated, may, perhaps, justify the inference, that the jury understood the court as ruling, that if the true commercial name of the article in question was "hemp carpeting," they might properly find it to be "a manufacture of hemp," although it was incontestably proved that no hemp was used in its manufacture, and that they were simply to say whether it was "a manufacture of hemp," or embraced within the description of "carpeting" as defined in Schedule C. If the question were now before me for decision, I should, whilst recognizing the principle that the denomination of articles in tariff laws must be construed according to the commercial understanding of the terms used, and that, if the term "hemp carpeting" had been used in the tariff act of 1846, it would, under the evidence stated in the case, have included the article in question in this suit, although it had been conclusively proved that it was manufactured from a fibre entirely different from, and never classed as, hemp, have great difficulty in adopting the opinion, that when the term, "a manufacture of hemp," is used, it can properly include any article in the manufacture of which no material has been used which, in its raw state, or in the state in which it existed before its introduction into the particular manufacture, is, in fact, or in commercial parlance, embraced within the generic term, "hemp." But this question is not directly before me, and I am inclined to think that, under the peculiar circumstances of the case, and the course adopted by the counsel upon the argument, it is not even incidentally in controversy.

The only question reserved by the case is that of the sufficiency of the protests. On the argument, it was conceded by the counsel for the defendant, that the protests upon seven of the entries were sufficient. It was, in like manner, conceded by the counsel for the plaintiffs, that there were no specific protests in respect to seven others of the entries, and that the plaintiffs had no right of action in respect to the payment of duties on those entries, or any of them, unless the prospective portion of the protests on two of the first mentioned seven entries could be extended to and made to embrace entries subsequently made. The particular protests in regard to the sufficiency of which there was an argument at the hearing, were those made in the cases of the Lady Franklin, the Columbia, the Ocean Queen, the American Eagle and the Invincible.

In the case of the Lady Franklin, the entry was of eleven bales, containing linens; and, in the invoice presented at the time of the entry, two of the packages were invoiced as "padding," and the others as "carpeting." The custom-house marks on this entry and invoice indicate, (as I understand them), that the contents of all the packages were returned, or denominated by the appraisers, as "jute carpeting," and subjected to a duty of 30 per cent. The protest is "against paying 30 per cent. duty on the 'jute carpeting,' contained in this entry, claiming that, by the act of 30th July, 1846, [9 Stat. 44, 45,] said goods are considered a non-enumerated article, and, as such, liable to a duty of 20 per cent." This protest must, I think, be held to be insufficient. It claims that the article invoiced is non-enumerated, and that its true commercial designation is "jute carpeting," while the jury have, as I think I am bound to assume, found it to be "a manufacture of hemp." If they have found that it was "a manufacture of hemp," (as the counsel on both sides have assumed,) it was an enumerated and not a non-enumerated article. Indeed, the parties have, by their counsel, deliberately agreed, that the protests which claim the article to be "a manufacture of hemp," are sufficient; and this agreement necessarily involves the admission, for the purposes of the questions here presented, that it is a manufacture of hemp, and an enumerated and not a non-enumerated article. I therefore hold, that the protest in the case of this entry is not sufficient, and that the plaintiffs cannot recover in respect to any excessive payment made upon it.

The protest in respect to the payments under the entry by the Columbia, is based upon the claim, that the article is a "manufacture of jute;" and, for the reasons just given, this protest must be held to be insufficient.

The protest in respect to the payments under the remaining three entries are severally based upon the claim that the article entered is "manufactured hemp," which is a non-enumerated article. "A manufacture of hemp" and "manufactured hemp" are different articles, and there can be no pretence for claiming that the articles in question are properly designated as "manufactured hemp," either in common or in commercial parlance. These protests are therefore clearly insufficient, and the plaintiffs cannot recover in respect to these entries, unless they are covered by the prospective portion of the two prior protests before mentioned.

Those prior protests were conceded to be good in respect to the particular entries in which they were made; but it was insisted that they were insufficient to cover the subsequent entries. In the only one of the two prospective protests which is at all full and explicit, the plaintiffs, after stating their pro-

test, and the grounds thereof, add: "We pay the amount exacted, in order to get possession of the goods, claiming to have the difference refunded, and hereby protest on all future entries of the same goods." In regard to the subsequent cases in which a specific protest was made, placing the objection to the payment of the 30 per cent. upon other and distinct grounds, I feel no difficulty in deciding that this prospective protest can have no effect. The fact that it has been held that such particular and specific protests were insufficient, because no good objection was distinctly and specifically stated therein, can make no difference. When these specific protests were subsequently made, without any reference to or affirmance of the prior prospective protests, the collector had a right to assume that all grounds of objection except those distinctly stated in the specific protest were abandoned; at least, in regard to the entry to which such specific protest applied. Therefore, the plaintiffs cannot recover any excess of duty paid on the entries as to which insufficient specific protests were made.

In respect to the cases in which no specific protests were made, and as to which the plaintiffs rely upon the prospective protest before mentioned, it appears that the articles entered in the case in which such prospective protest was made, are described in the entry as 2 packages of "jute rove," 12 packages of "hemp covering," and 13 packages of linens; and the claim in the protest is, "that, under the existing tariff, said goods are liable to a duty of 20 per cent. only, because they are manufactures of hemp." In the entries which are sought to be covered by this protest, the articles are described as 23 bales of "hemp carpet covering," 99 bales of linens, 7 bales of "hemp carpeting," 1 bale of "jute rove," 1 bale of "hemp matting," and 3 bales of "hemp covering." It may well be doubted whether such a sweeping prospective protest ought, under any circumstances, to be held good in respect to entries made at such a port as New York. The entries made there are so numerous, the necessity for the rapid transaction of business so pressing, and the number of persons employed in the custom-house so great, that such a prospective protest would not be likely to be kept in constant remembrance by the collector, or the subordinates having charge of his accounts, especially as such subordinates must be sometimes changed; and it certainly would not be a strict and full compliance with the act of February 26th, 1845, (5 Stat. 727,) which requires that the party protesting against the payment of duties shall set forth "distinctly and specifically the grounds of objection to the payment thereof." The case of Marriott v. Brune, 9 How. [50 U. S.] 619, was peculiar, and certainly should not be extended. Warren v. Peaslee, [Case No. 17,198.] Can it be possible that such a prospective protest, annexed to an en-

try of "linens" only, could be extended to all other importations of articles embraced within that very general and comprehensive term? I think not, and shall hold that this protest, as to the articles subsequently entered as "linens," is insufficient. The term "hemp covering" is a different term from "hemp carpet covering," and "hemp carpeting," used in the subsequent entries, and the collector was not bound to know that they were used to describe the same article, if such was indeed the fact. The "jute rove" is mentioned in one of the subsequent entries, and the two importations were within three weeks of each other, and no protest was made on any intermediate importation of the article. I am, therefore, inclined to hold, under the decision in Marriott v. Brune, [supra,] and the decisions in this circuit, that the protest in regard to the single bale of "jute rove," subsequently entered, is sufficient. In regard to the other subsequent entries, I shall hold the protest insufficient. The two entries next in order of date after the one in which the prospective protest referred to was made, were made without any protest, and, in regard to these, it may be assumed that the party relied on such prospective protest. These two entries describe the article as "hemp carpet covering," "linens," hemp carpeting," and "jute rove." On each of five successive importations thereafter a separate and specific protest was made, and I think the collector had a right to infer that the former prospective protest was not further relied upon. Two of those five specific protests were conceded to be sufficient, and the others have been adjudged insufficient. Following these five importations and entries with specific protests, four other importations and entries were made without any protest. Under such circumstances, it strikes me that the former prospective protests ought not to be extended to these last importations and entries, even though, in respect to them, no specific protest was made.

The plaintiffs must have judgment according to this opinion, unless the parties stipulate to reargue the matter, upon an amended case, or otherwise, which would seem to be the better course. Indeed, the case omits very many of the facts necessary to the determination of the questions reserved, and they have been decided upon the admissions of counsel made on the argument, and papers then furnished, which do not strictly form any part of the case. On the admissions of the counsel, and what I regard as an inaccurate statement of the charge of the court, I have held, (and I think necessarily,) that the jury found the articles in question to be "a manufacture of hemp"—a finding which, in my judgment, was wholly unwarranted by the testimony; and I have consequently ordered judgment for the plaintiffs on the ground that some of the protests are sufficient, whilst I am quite confident

that, under a proper finding, they would necessarily be adjudged insufficient. I am, besides, clear, that the charge of the court is not fully and fairly set forth, and I entertain some doubts whether the verdict of the jury is properly stated in the case. If it was specific and distinct in regard to the character or true designation of the article in controversy, or if they found that it was "a manufacture of hemp," or that it was a non-enumerated article, known in commerce as "hemp carpeting," this should have been distinctly stated on the face of the case. For these and other reasons, I hope the case will be amended, and the cause again argued.